# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RICHARD P. LORITZ II,

Plaintiff,

v.

BONNIE DUMANIS, et al.,

Defendants.

Case No. 2:06-CV-00735-KJD-RJJ

**ORDER**

Defendant filed the instant Motion to Dismiss for Lack of Jurisdiction and Improper Venue (#18) on December 4, 2006. The Court has considered the Motion (#18), Plaintiff's Response (#26), and Defendants' Reply to Plaintiff's Response (#29).

**BACKGROUND**

In this case, the Plaintiff is bringing a civil rights complaint under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 against sheriff and detective Hank Ramos, District Attorney investigator Jay Jay, sheriff William Kolender, District Attorney Bonnie Dumanis, and California parole agents Santo Sanchez, M. Norman, M. Quintanilla, and Ted Payne (hereinafter referred to collectively as "Defendants"). Plaintiff alleges that his parole conditions violate his First Amendment right to

freedom of speech, right to access the courts, and right to associate with family. The Plaintiff seeks declaratory and injunctive relief over the Defendants in their official capacities as well as monetary damages against them in their individual capacities. Defendants have filed a Motion to Dismiss alleging that the claims are barred by the statute of limitations, that the Court lacks subject matter and personal jurisdiction, and that the District of Nevada is an improper venue.

## DISCUSSION

### I. Statute of Limitations

The Supreme Court has held that a federal court adjudicating rights under a § 1983 claim will adopt the "[s]tate's personal injury statute of limitations." Owens v. Okure, 488 U.S. 235, 241 (1989). In Nevada, the statute of limitations for personal injuries is two years. See NRS 11.190(4)(e). Accordingly, a § 1983 claim filed in the District of Nevada must be filed within two years of when the cause of action accrues. See Perez v. Seevers, 869 F.2d 425, 426 (9th Cir. 1989) (Holding the residual statute of limitations for personal injuries in Nevada is section 11.190(4)(e)). "A federal claim accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" Bagley v. CMC Real Estate Corp., 923 F.2d 758, 760 (9th Cir. 1991)(citing Norco Construction, Inc. v. King County, 801 F.2d 1143, 1145 (9th Cir. 1986)). Further, "the coordinate [state] tolling rules" will also be applied as long as they are consistent with federal law. Hardin v. Straub, 490 U.S. 536, 538 (1989).

In this case, the Defendants are urging that the Court consider that the Complaint was filed on the date that the Complaint was actually imaged and put on the electronic docket by the clerk's office. The Plaintiff contends that the date the Complaint was filed is the date that it was received by the clerk's office when he submitted his application to proceed *in forma pauperis*. "Although a complaint is not formally filed until the filing fee is paid, we deem a complaint to be constructively filed as of the date that the clerk received the complaint—as long as the plaintiff ultimately pays the filing fee or the district court grants the plaintiff's request to proceed *in forma pauperis*." McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996), (citing Rodgers ex rel. Jones v. Bowen,

790 F.2d 1550, 1551–52 (11th Cir. 1986) (italics added)); See also Lyons v. Goodson, 787 F.2d 411, 412 (8th Cir. 1986). Since a Plaintiff cannot "foresee how or when a court will rule on an IFP application, the reasonable interpretation is to allow a tolling in the statute of limitations while the IFP application is pending." Jones v. Bertrand, 171 F.3d 499, 502 (7th Cir. 1999). "A copy of the complaint arrived in the hands of the Clerk within the statutory period." Loya v. Desert Sands Unified School Dist., 721 F.2d 279, 280 (9th Cir. 1983). The Ninth Circuit has made clear that local rules "designed merely for the convenience of the court's own record keeping" should not be "elevate[d] to the status of a jurisdictional requirement." Id. The court held that "for purposes of the statute of limitations the district court should regard as 'filed' a complaint which arrives in the custody of the clerk within the statutory period but fails to conform with formal requirements in local rules." Id. at 281. Therefore, "the filing date will relate back to the date on which the clerk received plaintiff's papers." McDowell, 88 F.3d at 191.

In this case, the clerk received Plaintiff's Complaint on June 16, 2006, as is evidenced by the file stamp on the Complaint. The Complaint was entered on the docket on June 21, 2006, reflecting the time it takes the clerk to image the documents. Although in this case, it appears that the Complaint was not properly imaged until October 11, 2006. Nonetheless, the clerk received the papers on June 16, 2006. The Application to Proceed *in Forma Pauperis* was granted on September 19, 2006. Therefore, the filing date relates back to June 16, 2006.

The first allegation of a violation of a civil right, in paragraph 6 of the Complaint, occurred in February 2004. This is outside of the two year statute of limitations. The Plaintiff argues that the statute tolled during the period that he was incarcerated. However, this contention is incorrect. The Plaintiff has not alleged any facts that would permit equitable tolling. The fact that Plaintiff was incarcerated is not a sufficient reason to toll the statute of limitations.

In the subsequent paragraph of the Complaint, it is impossible for the Court to determine when the conduct occurred. The Plaintiff's unnotarized affidavit is helpful because it asserts that the Plaintiff began residing in Laughlin, Nevada on July 17, 2004. In the Complaint the Plaintiff alleges

that he stayed in a hotel in Victorville for several weeks while awaiting approval for his parole to Nevada. Further, the conduct alleged in paragraph 8 and continuing through the rest of the Complaint, occurred within two years prior to Plaintiff's filing of his Complaint.[1] "[W]hen a motion to dismiss is brought on the ground that the Plaintiff's complaint is untimely, 'a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" Wisenbaker v. Farwell, 341 F. Supp. 2d 1160, 1163 (9th Cir. 2004) (quoting Supermail Cargo, Inc. v. U.S., 68 F.3d 1204, 1207 (9th Cir. 1995)). Therefore, the Complaint will not be dismissed in its entirety based on the running of the statute of limitations. Only the allegations in paragraph 6 of the Complaint will be dismissed for statute of limitations purposes, because there are no set of facts that the Plaintiff could prove that would bring those claims within the statute of limitations.

## II. Subject Matter Jurisdiction

The Plaintiff alleges jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1331.

### A. Diversity Jurisdiction

The requirements of diversity jurisdiction are that the plaintiffs and the defendants have complete diversity and the claim exceeds $75,000. 28 U.S.C. § 1332. In this case, the Plaintiff alleges that there is complete diversity based on the fact that Plaintiff is a resident of Nevada and all of the Defendants are residents of California. The Defendants allege that there is not complete diversity because all of the Defendants reside in the same state, California. The Defendants grossly misconstrue the concept of complete diversity. Complete diversity means that all of the Plaintiffs must be completely diverse from all of the Defendants. Here, there is only one plaintiff and he is a resident of the state of Nevada. The Defendants are all residents of California. Therefore, there is complete diversity between the Plaintiff and all Defendants in this case. The amount in controversy exceeds $75,000. Therefore, the Plaintiff has satisfied the requirements of diversity jurisdiction.

---

[1] The alleged conduct occurred in and after July 2004, this is within two years of the filing of the Complaint in June 2006.

**B. Federal Question Jurisdiction**

The Complaint is also premised on the violation of a federal law. Plaintiff is alleging violations of his civil liberties under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. Therefore, federal question jurisdiction is invoked. See 28 U.S.C. § 1331.

The Defendants contend that the allegations implicate the validity of Plaintiff's conviction and should be dismissed based on the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994). The Defendants argue that Heck has been extended to apply in the parole context based on Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir. 1997). The Plaintiff contends that he is not arguing that his civil rights have been violated based on his continued confinement, but rather based on the restraints that have been placed on his constitutional rights.

There is not controlling precedent as to whether there is a Heck issue when a "parolee preemptively challenges the conditions of his parole" prior to a violation. Lee v. Jones, 2006 WL 44188, *3 (D. Or. 2006). In Butterfield, the parolee was challenging "the procedures used in the denial of parole[.]" 120 F.3d at 1024. The Court concluded that the challenge would "necessarily implicate[ ] the validity of the denial of parole and, therefore, the prisoner's continuing confinement." Id. Here, the Plaintiff is not challenging the denial of parole. Further,

> [n]either the Supreme Court nor the Ninth Circuit has specifically addressed whether a parolee challenging the conditions of his parole fits within the core of habeas corpus. The courts that have[,] tend to distinguish between situations where (1) the parolee challenges the validity of his parole conditions in the context of his parole being revoked for violation of the challenged conditions, and (2) the parolee preemptively challenges the conditions of his parole, without any revocation. In the first context, courts have found, consistent with Heck, that challenges to parole conditions in the context of revocation necessarily imply the invalidity of the parole revocation decision or the plaintiff's continued imprisonment, and therefore the revocation decision must be found invalid in a separate proceeding before a § 1983 proceeding is proper.

Lee v. Jones, 2006 WL 44188, *3. However, "in cases where the parolee preemptively challenges his parole conditions, as is the case here, courts are less consistent." Id.

In Moreno v. California, 25 F. Supp. 2d, 1060, 1062 (N.D. Cal. 1998), the court determined that "conditions of parole are part of the underlying sentence for purposes of Heck analysis." The Court reasoned,

> [p]arole conditions which restrain the parolee's liberty in a manner not shared by the general public are sufficient to render the parolee 'in custody' for purposes of habeas analysis. Because parole conditions impose restraints on the parolee's freedom for the duration of the parole period, and because violation of such conditions may result in further incarceration, it is logical that parole conditions be considered part of the sentence.

Moreno v. California, 25 F. Supp. 2d 1060, 1062 (N. D. Cal. 1998). A parolee who has violated a condition of parole may not challenge the parole revocation or condition "by means of a § 1983 claim unless the revocation has been overturned or otherwise invalidated." Id. at 1063. The court concluded that

> [i]t would be inconsistent to allow a parolee to challenge the same condition by means of a § 1983 action simply because the condition has not been violated. In fact, several courts have held that parole conditions properly should be challenged by means of a habeas petition rather than a § 1983 action.

25 F. Supp. 2d at 1063 (citing Bass v. Mitchell, 1995 US App. Lexis 9663, 1995 WL 244043 (8th Cir. 1995); Drollinger v. Milligan, 552 F.2d 1220, 1224 (7th Cir. 1977); Bagley v. Harvey, 718 F.2d 921 (9th Cir. 1983)).

To the contrary, in Yahweh v. U.S. Parole Comm'n, 158 F. Supp. 2d 1332 (S.D. Fla. 2001), the court concluded that "habeas corpus is not an exclusive remedy for parolees challenging their parole conditions." The court rationalized that a challenge to the conditions of prison life "need not be brought as a habeas corpus petition." Id. at 1339 (citing Preiser v. Rodriquez, 411 U.S. 475, 498 (1973)). The court further stated that "the habeas corpus remedy is exclusive [only] when the fact or duration of custody is challenged." Id. at 1338. The court equated the conditions of parole to the rules and regulations of prison life. Id. "The Supreme Court, in describing 'the function of parole in the correctional process,' has observed, 'rather than being an ad hoc exercise of clemency, parole is an established variation on imprisonment of convicted criminals.'" Id. (citing Morrissey v. Brewer, 408 U.S. 471, 477 (1972)). The court concluded that the "bars" that confine the parolee are not the

parole conditions, but rather the underlying conviction and sentence. Id. at 1338. The court determined that the purposes of the rules and regulations in prison are analogous to the parole conditions in that they are intended to advance the rehabilitation of the prisoner and protect the public. Id. at 1339. The court held that there should be no differences in challenges to parole conditions than challenges to prison conditions.

This Court agrees with the reasoning in Yahweh and Lee. The Court finds particularly persuasive the Lee court's analysis of the Supreme Court's distinction in Preiser, 411 U.S. at 498, between a proper habeas corpus case versus a § 1983 action. See Lee, 2006 WL 44188 at *2. In Preiser, the Supreme Court distinguishes habeas cases from § 1983 actions by stating that all of the validly brought § 1983 claims were "related solely to the State's alleged unconstitutional treatment of them while in confinement[,]" none "challenge[d] the very fact or duration of the confinement itself. From these cases, the Court finds that a § 1983 claim is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." Preiser, 411 U.S. at 498. Here, the parolee is merely challenging the conditions of his release, not the fact that he is being monitored nor the duration of his parole. The Plaintiff is alleging unconstitutional conditions being imposed upon him. Similar to a prisoner's claims that the prison regulations violate his constitutional rights, a parolee should be allowed to challenge the constitutionality of his release conditions if he is not calling into question the fact or duration of parole. The Court agrees with the Lee court in that the confinement is not the conditions imposed upon the parolee, but rather the underlying conviction and sentence are the confinement. Even if the Court were to invalidate one or more of the parole conditions as contrary to the Constitution, the parolee would still be subject to confinement. Further, Butterfield is inapplicable because there the prisoner was challenging the fact that he had not been paroled and was essentially challenging his continued confinement. See Butterfield, 120 F.3d 1023. Here, the parolee is not challenging the fact of his parole nor continued confinement. Therefore, contrary to Defendants' contention, the Court finds that Heck is distinguishable and inapplicable to this case.

**III. Immunity**

The Defendants contend that they are entitled to absolute immunity for enforcing parole conditions. "Although state officials are entitled to some degree of immunity from § 1983 damages actions arising from their official acts, 'the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their official duties.'" Swift v. California, 384 F.3d 1184, 1188 (9th Cir. 2004) (quoting Burns v. Reed, 500 U.S. 478, 486–87 (1991)). The Ninth Circuit has held that "parole board members are entitled to absolute immunity when they perform 'quasi-judicial' functions." Id. at 1189 (citing Anderson v. Boyd, 714 F.2d at 909-10 (9th Cir. 1983)). This only includes decisions "to grant, deny, or revoke parole[,]" as well as "imposition of parole conditions[.]" Id. (citations omitted). The Ninth Circuit distinguishes situations where the parole officials are not acting within the adjudicatory or quasi-judicial role, stating that "conduct arising from their duty to supervise parolees is qualified." Id. (quoting Anderson, 714 F.2d at 910). Here, the decision to impose the parole conditions is entitled to absolute immunity because the parole board was performing a quasi-judicial function. However, the subsequent administrative and enforcement functions performed by the parole officers are not entitled to absolute immunity because the officers were not acting in an adjudicatory role. The alleged conduct performed by Defendant Norman in forcing the Defendant to sign the parole conditions was conducted pursuant to Norman's duties in implementing the parole and are entitled to absolute immunity. Further, the allegations against Sanchez for writing the special parole conditions are likewise entitled to absolute immunity.

**IV. Personal Jurisdiction**

Since this Court has subject matter jurisdiction over the claims in the Complaint, it is necessary to determine whether or not the Court has personal jurisdiction over the particular Defendants.

> When personal jurisdiction is challenged by motion as an initial response, and 'the [district] court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie

> showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss.' Thus, in order to defeat [a] motion[ ] to dismiss for lack of personal jurisdiction, at this stage, Plaintiff[ ] only need[s] to make, through [ ] pleadings and affidavits, a prima facie showing of the jurisdictional facts.

Myers v. Bennett Law Offices, 238 F.3d 1068, 1071 (9th Cir. 2001) (quoting Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977); and citing Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 912 (9th Cir. 1990)). However, the plaintiff must establish personal jurisdiction over each defendant with respect to each claim asserted. See Data Disc, Inc., 557 F.2d 1280. "For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must liberally construe the complaint in the light most favorable to the plaintiff." Moreno, 25 F. Supp. 2d at 1062 (citing Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Argabright v. U.S., 35 F.3d 472, 474 (9th Cir. 1994)).

The Defendants urge the Court not to consider the unnotarized affidavits submitted by the Plaintiff and his mother. "[F]ederal law clearly states that an affidavit signed under penalty of perjury has the same effect as if it had been sworn to before a notary. Tuohey v. Clark Oil & Refining Corp., 1994 WL 280084, *1 n.1 (N.D. Ill. 1994) (citing 28 U.S.C. § 1746; Pfeil v. Rogers, 757 F.2d 850 (7th Cir. 1985); Davis v. Frapolly, 756 F. Supp. 1065 (N.D. Ill. 1991)). Therefore, the Court will consider the affidavits in making its decision. However, it should be noted that the affidavits are consistent with the allegations on the face of the Complaint and the Court's ruling would be the same even if it did not consider the affidavits.

**A. Consent/Waiver**

Defendants, Kolender and Dumanis did not consent to this Court's jurisdiction by filing an opposition to the Plaintiff's Ex Parte Motion for Injunctive Relief. The Defendants included in their Motion to Dismiss the defense of lack of personal jurisdiction which was the first appearance the Defendants made in this case. Under Fed. R. Civ. P. 12(h), the defense of personal jurisdiction is only waived if neither made by motion, nor included in a responsive pleading. Here, the Defendants

asserted the defenses of lack of subject matter, lack of personal jurisdiction, and improper venue properly according to Fed. R. Civ. P. 12(b). Therefore, the Defendants have not waived the defenses.

**B. General Jurisdiction**

"A defendant whose contacts with a state are 'substantial' or 'continuous and systematic' can be haled into court in that state in any action, even if the action is unrelated to those contacts." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). In this case, the Defendants do not have a substantial or continuous presence in the state of Nevada. The Defendants are all residents of California. Further, the Plaintiff has not alleged facts that would establish that the Defendants have a substantial or continuous presence in the state of Nevada. Therefore, the Court does not have general jurisdiction over the Defendants.

**C. Specific Jurisdiction**

"When subject matter jurisdiction is premised on a federal question, a court may exercise specific jurisdiction over a defendant if a rule or statute authorizes it to do so and the exercise of such jurisdiction comports with the constitutional requirement of due process." Myers, 238 F.3d at 1072. According to Fed. R. of Civ. P. 4(k)(1)(A), "'service of a summons . . . is effective to establish jurisdiction over the person of a defendant []who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'" Myers, 238 F.3d at 1072 (quoting Fed. R. Civ. P. 4(k)(1)(A)). Since service of the summons was not in Nevada, it is necessary to "look to Nevada's long-arm statute. The Nevada Supreme Court has interpreted Nevada's long-arm statute to reach the limits of federal constitutional due process." Id. Therefore, the relevant analysis is whether the Defendants have minimum contacts with Nevada so as to satisfy constitutional due process.

The Ninth Circuit utilizes a three prong test when determining "the nature and quality of [a defendant's] contacts for purposes of specific jurisdiction[.]" Id. First, the Defendant must "purposefully avail[ ] [himself] of the privilege of conducting activities in the forum, thereby

invoking the benefits and protections of the forum's law. Second, the claim must arise out of [the] forum-related activities. Third, the exercise of jurisdiction must be reasonable." Id.

"Once the defendant has challenged the exercise of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction." Butcher's Union Local No. 498 v. SDC Investment, Inc., 788 F.2d 535, 538 (9th Cir. 1986) (citing KVOS, Inc. v. Associated Press, 299 U.S. 269 (1936)). Here, the Defendants have challenged the ability of this Court to exercise personal jurisdiction. Therefore, the burden of establishing jurisdiction lies with the Plaintiff.

**1. Purposeful Availment**

The Ninth Circuit has stated that the purposeful availment prong of the personal jurisdiction analysis "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Myers, 238 F.3d at 1072 (quoting Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000)). The Supreme Court

> approved an 'effects test, holding that where the defendants knew that their actions would have a potentially devastating effect on the plaintiff, who resided in California, and that the brunt of the injury caused by their actions would be felt in California, they were subject to the jurisdiction of the California courts. Calder, 465 U.S. at 790. The fact that there was no physical contact with California and that their actions all took place in Florida would not relieve them of personal jurisdiction where the effects of their Florida conduct were felt in California. Id.

Brainerd v. Governors of University of Alberta, 873 F.2d 1257, 1260 (9th Cir. 1989).

Here, the Defendants argue that the face of the Complaint does not even remotely indicate that any of the Defendants purposefully directed any activity toward Nevada. The Defendants contend that the only conduct that occurred in Nevada was by two unnamed Defendants who traveled to Laughlin, Nevada and met with a Nevada parole agent. The Defendants argue that there is no allegation in the Complaint suggesting any nexus between the moving Defendants and the two Doe Defendants who traveled to Nevada. The Defendants also contend that the Complaint fails to set forth any factual basis concerning the visit and Plaintiff's alleged constitutional injuries. On the other hand, the Plaintiff alleges that he was residing in Nevada at the time of the alleged violations of

his First Amendment rights. Plaintiff argues that since the Defendants knew that their conduct would have an effect on a Nevada resident, the Defendants should be subject to the jurisdiction of Nevada courts.

Paragraphs 7 and 11–21 of the Complaint make allegations against Defendants, Dumanis, Ramos, Kolender and Sanchez. Specifically, Plaintiff alleges that Dumanis, Ramos, and Kolender pressured the parole office to impose restrictions that allegedly violate the Plaintiff's rights to freedom of speech, access to the courts, and association with family. The Complaint alleges that Defendant Sanchez wrote the parole conditions. Defendant Quintanilla is allegedly Sanchez's supervisor. The Complaint further alleges that the Plaintiff had to pay to stay in a motel for weeks until his parole to Nevada was approved. Plaintiff alleges that the Defendants were aware that he was paroling to Nevada when the parole conditions were written. However, the mere fact that the Defendants were aware that the Plaintiff would be residing in Nevada does not prove that the Defendants purposefully availed themselves of the jurisdiction. Further, the allegations that the Defendants had the Plaintiff transferred two days prior to his parole, refusing to allow his parents to pick him up all occurred within California. Likewise, the effects of the conduct were felt within the state of California. The Defendants did not undertake any affirmative action to participate in any activity within the state of Nevada. It was the Plaintiff who decided to move to Nevada. The Defendants were merely trying to accommodate the Plaintiff by approving his parole to another jurisdiction. Further, as previously discussed, the Defendants are entitled to absolute immunity for the imposition of the parole conditions. Therefore, the imposition of the parole conditions by itself does not establish sufficient minimum contacts over the Defendants. However, the alleged subsequent acts committed by the Defendants may establish minimum contacts.

In paragraphs 25–26 of the Complaint Plaintiff makes allegations against Defendant Payne. Said allegations do not establish purposeful availment for purposes of minimum contacts. The allegations merely state that Payne told the Plaintiff he could not put information on the internet. Payne did not take any affirmative steps to participate in any activity within the state of Nevada. A

single phone call to the state of Nevada is not sufficient. Therefore, the Plaintiff cannot establish personal jurisdiction over Defendant Payne.

Similarly, paragraph 27 of the Complaint makes allegations against Defendant Sanchez. Plaintiff alleges that Sanchez spoke with Plaintiff, telling him not to place certain documents on the internet. Sanchez allegedly told Plaintiff that he could ban Plaintiff from having access to the internet, could prohibit him from having a computer, and that if Plaintiff violated the conditions of his parole, Plaintiff would not be allowed to return to Nevada. Similar to Plaintiff's claims against Payne, here, the facts in paragraph 27 fail to demonstrate any affirmative steps to participate in activity within the state of Nevada.

In Paragraphs 8 and 28 of the Complaint, Plaintiff alleges that Dumanis sent Jay Jay to the Plaintiff's parents' residence in Nevada in order to intimidate the Plaintiff from exercising his right to freedom of speech.[2] The Complaint also alleges that Sanchez accompanied Jay Jay to Plaintiff's parents' residence allegedly under the direction of his supervisor Quintanilla. The Ninth Circuit has held that "the actions of an agent are attributable to the principal" for purposes of establishing personal jurisdiction. Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990). "A party claiming apparent authority of an agent must prove (1) that the acting party subjectively believed that the agent had authority to act for the principal and (2) that the subjective belief in the agent's authority was objectively reasonable." Myers, 238 F.3d at 1073 (citation omitted). Apparent authority is a question of fact. Id. Therefore, the Plaintiff must only establish a prima facie case of apparent authority for purposes of this Motion. Even if Jay Jay was not an actual agent of Dumanis, the Court finds that Plaintiff has demonstrated a prima facie showing of apparent authority. Based on the allegations in the Complaint, Plaintiff subjectively believed that Jay Jay was acting on behalf of Dumanis. Whether or not the subjective belief was reasonable does not need to be determined here. Since the Plaintiff has demonstrated a prima facie showing that an agent of Dumanis went to Nevada

---

[2]While the Complaint does not indicate the location of the residence, based on the previous paragraph in the Complaint it is clear that at the time of the alleged conduct the Plaintiff and his parents were residing in Nevada.

and engaged in activity that may have intimidated the Plaintiff and/or restrained his right to freedom of speech, Plaintiff has sufficiently shown, for the purposes of this Motion, that the Defendants, Dumanis and Jay Jay purposefully directed their conduct into the state of Nevada. However, since Jay Jay was only an agent of Dumanis in her official capacity, only the official capacity claim may proceed against Dumanis. Similarly, since Defendant Quintanilla is a direct supervisor of Sanchez, the Plaintiff has presented a prima facie showing that Sanchez was an agent of Quintanilla. Therefore, the Plaintiff has demonstrated Sanchez and Jay Jay purposefully availed themselves of the jurisdiction of Nevada, and that Defendants Dumanis and Quintanilla have purposefully availed themselves of the privilege of conducting activities in this jurisdiction for the claims regarding their official capacity.

The actions Plaintiff alleges Sanchez and Jay Jay engaged in are, that the parties met Plaintiff at his parents' residence in Nevada, where Sanchez "strongly warned" Plaintiff against putting information on the internet, and that Jay Jay told Plaintiff that "if he put evidence exposing wrongdoing by an attorney on the internet, the attorney would win because plaintiff would be sent back to prison." (Compl. at 8.) Although the Court finds it questionable that Sanchez and Jay Jay's alleged actions constitute behavior sufficient to sustain Plaintiff's claims, the Court must construe all facts as alleged on the face of the Complaint as true, and in the light most favorable to the Plaintiff.[3] Therefore, the Court finds that the activities alleged of Jay Jay and Sanchez described in paragraph 28, demonstrate that Jay Jay and Sanchez availed themselves of the jurisdiction.

In paragraphs 34–35 of the Complaint Plaintiff alleges that while attending hearings in San Diego, a person from the DA's office was present in the courtroom. Plaintiff alleges that on a subsequent visit to San Diego, Defendant Ramos was in the courtroom. Plaintiff alleges that the Defendants were present at the hearings in an attempt to intimidate the Plaintiff. There is no

---

[3]Through his *pro se* pleadings, Plaintiff, a law school graduate, has demonstrated his knowledge of the legal system. The Court is not persuaded that any comment regarding Plaintiff going back to prison posed a meritorious threat to Plaintiff, who clearly understands that such a procedure would first require a full judicial hearing and revocation of his parole.

evidence that this conduct was directed towards the Plaintiff within the state of Nevada nor had any effect on the Plaintiff within the state of Nevada.

Similarly, in paragraphs 37–44 Plaintiff alleges incidents where a "well-dressed tall white male" and an "Asian male" (both Doe Defendants) were present at court hearings in San Diego. (Compl. at 10.) Plaintiff also alleges incidents of police cars driving past his residence in attempt to intimidate him. Id. Likewise, these allegations are not sufficient to prove that Defendants purposely availed themselves of the privilege of conducting activities within the state of Nevada.

In paragraph 36 of the Complaint, Plaintiff alleges that Defendants Ramos, Jay Jay, and a Doe Defendant from the DA's office flew to Laughlin, Nevada to meet with the local police and the Plaintiff's Nevada parole agent. Plaintiff claims that such action was intended to chill his right to access the courts. Here however, even construing the allegations in the Complaint as true, the Court cannot find that Defendants, Ramos, Jay Jay, and the Doe Defendant's alleged action of flying to Laughlin to meet with a Nevada parole agent, alone, is sufficient to establish minimum contacts. Plaintiff has failed to make a prima facie showing that Ramos, Doe Defendant, or Kolender have had sufficient minimum contacts with the state of Nevada, and therefore Plaintiff's claims against Ramos, Doe Defendant, and Kolender, as alleged in paragraph 36 do not support the exercise of specific jurisdiction over said Defendants.

Therefore, the Court finds that the only Defendants for whom Plaintiff has demonstrated prima facie allegations of minimum contacts with the state of Nevada are Defendants Jay Jay and Sanchez in both their individual and official capacities, and Defendants Dumanis and Quintilla in their official capacities.

**2. Arises Out Of or Relates to Conduct**

"The second requirement for specific jurisdiction is that the contacts constituting purposeful availment must be the ones that give rise to the current suit." Bancroft & Masters, Inc., 223 F.3d at 1088. This is measured "in terms of 'but for' causation." Id. Here, the Court has established that Plaintiff has failed to show that any Defendants other than Jay Jay and Sanchez, and Dumanis and

Quintilla in their official capacities, purposefully availed themselves within the state of Nevada. Here however, the Court finds that the allegations against Jay Jay and Sanchez give rise to some of Plaintiff's claims. Therefore, Plaintiff's claims arising out of or relating to the alleged conduct of Jay Jay and Sanchez and their supervisors are sufficient to establish the purposeful availment prong of minimum contacts.

**3. Fair Play and Substantial Justice**

In determining whether jurisdiction is reasonable the Ninth Circuit employs several factors to be analyzed, including "(1) burden on the defendant; (2) existence of an alternative forum; (3) convenience and effectiveness of relief for the plaintiff; (4) interest of the forum state; (5) efficiency of adjudication; (6) extent of defendant's purposeful interjection into the forum; and (7) possibility of conflict with other sovereignty." Brainerd v. Governors of University of Alberta, 873 F.2d at 1260 (9th Cir. 1989). However, when the defendant has "purposefully directed his activities into the forum, personal jurisdiction is presumed to be reasonable. Id. A compelling case that jurisdiction would be unreasonable must be presented to overcome the presumption. Id.

Here, Defendants Jay Jay and Sanchez—along with their supervisors—purposefully directed their activity into the forum, and have not persuaded the Court that jurisdiction over them would be unreasonable. Nonetheless, the Court will analyze whether or not fair play and substantial justice will allow the claim to proceed in the District of Nevada. Here, the burden on the Defendant is minimal. Transportation and electronic communication make litigation out of state more convenient than in the past. The Plaintiff is located within the state of Nevada and has expressed strong sentiments of intimidation regarding travel to the state of California; therefore, the effectiveness of relief for the Plaintiff is great. Nevada has a strong interest in protecting the constitutional rights of its citizens. Here, an alternative forum does not exist for the Plaintiff. Although the Court finds it unpersuasive that the Plaintiff is completely barred from litigation within the state of California, if the Court dismisses the case, the Plaintiff will be unable to proceed in another forum because during the pendency of this case the statute of limitations has run on some of the claims unless the Plaintiff

can show a continuing harm. Adjudication in Nevada will efficiently resolve this dispute. Further, taking the allegations in the Complaint as true, Defendants Jay Jay and Sanchez and their supervisors have purposefully availed themselves of the privilege of conducting activities in the state of Nevada. Here, since there is a federal question at issue there is no possibility of conflict with another sovereign. Therefore, proceeding with the claims within the District of Nevada is reasonable and in the interest of fair play and substantial justice.

**V. Venue**

"On the venue issue, because subject matter jurisdiction is not founded solely on diversity of citizenship, the applicable statute is 28 U.S.C. § 1391(b). Under that statute, venue is proper in a judicial district if 'a substantial part of the events or omissions giving rise to the claim occurred' in that district. 28 U.S.C. § 1391(b)(2)." Myers, 238 F.3d at 1075. The locus of the injury has been deemed to be a substantial part of the events giving rise to the claim in a tort action. Id. at 1076 (citing Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867–68 (2d Cir. 1992)).

Defendants properly contend that jurisdiction is proper "in a judicial district where any Defendant resides, if all Defendants reside in the same State." 28 U.S.C. § 1391(b)(1). Here, it is undisputed that the Southern District of California would be a proper venue since all of the named Defendants reside in San Diego, California.

Likewise however, under 28 U.S.C. § 1991(b)(2), jurisdiction is also proper where a substantial part of the events giving rise to the claim occurred. Here, the Defendants allege that Plintiff's allegations of improper parole conditions, interference with associating with San Diego, California relatives, and impairment of access to San Diego, California courts, all occurred within California. The Plaintiff contends however, that his injuries occurred in Nevada. Since the Ninth Circuit has specifically stated that the locus of the injury is a substantial part of the events giving rise to the claim in a tort action, jurisdiction would also be proper at the locus of the injury. See Myers, 238 F.3d at 1075–76. Here, the Court must determine whether the Plaintiff's injuries occurred in California or in Nevada.

The Complaint alleges that the Plaintiff's First Amendment rights have been violated due to an unlawful restraint on his speech, restraint on access to the courts, and an interference with his right to associate with family. The alleged violations were imposed as conditions to his parole. The parole conditions were imposed within the state of California. However, the Plaintiff currently resides in the state of Nevada, subject to the parole conditions imposed by the California parole officials. Further, the Plaintiff alleges that the Defendants have traveled to Nevada in an effort to suppress his speech and intimidate him. Therefore, accepting the allegations in the Complaint as true, Plaintiff was injured and is still being injured in the state of Nevada. Since Plaintiff's injuries have occurred and are currently occurring within the state of Nevada, Nevada is a proper venue to bring the claims because a substantial part of the events giving rise to the claim have occurred within the state.

**CONCLUSION**

Plaintiff's claims may proceed against the Defendants that are subject to personal jurisdiction before this Court. The Plaintiff has established that Defendants Jay Jay and Sanchez, have had minimum contacts with the state of Nevada sufficient to establish personal jurisdiction in both their individual and official capacities. The Plaintiff has also established that Defendants Dumanis and Quintanilla have had sufficient minimum contacts while acting in their official capacities within the state of Nevada sufficient to establish personal jurisdiction. The Plaintiff has not established that Defendants, Ramos, Kolender, Norman, and Payne, have had sufficient minimum contacts with the state of Nevada in either their official or individual capacities.

Based on the foregoing and good cause appearing therefore,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction and Improper Venue (#18) is **GRANTED** in regards to paragraph 6 of the Complaint based on the running of the statute of limitations.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction and Improper Venue (#18) is **GRANTED** in regards to the personal jurisdiction over Defendants Ramos, Kolender, Norman, and Payne, in both their individual and official capacities.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction and Improper Venue (#18) is **GRANTED** in regards to the individual capacities of Defendants Dumanis, Kolender, and Quintanilla.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction and Improper Venue (#18) is **DENIED** in regards to personal jurisdiction over Defendants Dumanis and Quintanilla in their official capacities.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction and Improper Venue (#18) is **DENIED** in regards to the personal jurisdiction over Defendants Jay Jay and Sanchez in both their individual and official capacities.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction and Improper Venue (#18) be **DENIED** in regards to the claim of improper venue.

DATED this 27th day of June, 2007.

Kent J. Dawson
United States District Judge