# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RICHARD P. LORITZ II,

    Plaintiff,

v.

BONNIE DUMANIS, et al.,

    Defendants.

Case No. 2:06-CV-00735-KJD-RJJ

**ORDER**

    Currently before the Court are Defendants Sancho Sanchez and M. Quintinilla's Motion for Partial Summary Judgment (#44), and Defendant Jay Jay/Buttitta's Motion to Dismiss (#47).[1] Additionally, Defendants Sanchez and Quintinilla filed a Joinder (#51) to Jay Jay/Buttitta's Motion. Plaintiff filed a Response (#49) to Sanchez and Qunitinilla's Motion, and a Response (#53) to Jay Jay/Buttitta's Motion and a Response (#56) to Sanchez and Quintinilla's Joinder. Both Jay Jay/Buttitta and Sanchez and Quintinilla filed Replies (#s 54, 55) to Plaintiff's Responses, respectively. Here, the Court considers all of the motions, responses, and replies together, as all relate to the Court's jurisdiction over Defendants.

---

[1] The Correct spelling of Defendant Buttitta's name, as listed on his Motion to Dismiss, is "J.J. Buttitta". However, because has been referred to as "Jay Jay" in all proceeding Court filings, the Court herein will refer to Defendant Buttitta as "Jay Jay/Buttitta."

**I. Background**

Plaintiff Richard Loritz (Loritz) filed a civil rights complaint under 28 U.S.C. § 1343, and 42 USC § 1983 against sheriff and detective Hank Ramos, District Attorney investigator Jay Jay/Buttitta, sheriff William Kolender, District Attorney Bonnie Dumanis, and California parole agents Santo Sanchez, M. Norman, M. Quintanilla, and Ted Payne (hereinafter referred to collectively as "Defendants"). Plaintiff's Complaint alleges that the conditions of his parole violate his First Amendment right to freedom of speech, right to access the courts, and right to associate with family.

Defendants filed a Motion to Dismiss (#18), on December 4, 2006, alleging, *inter alia* that the Court lacks subject matter and personal jurisdiction, and that the District of Nevada is an improper venue. On June 27, 2007, the Court issued an Order (#39) granting in part, and denying in part Defendants' Motion to Dismiss. The Court granted dismissal for all Defendants, with the exception of Defendant Sanchez (in an individual and official capacity), Defendant Quintinilla (in his official capacity), Defendant Dumanis (in an official capacity), and Defendant Jay Jay/Buttitta (in an individual and official capacity). Specifically, the Court found that Plaintiff had alleged facts sufficient to demonstrate that Defendants Sanchez and Jay Jay/Buttitta had visited Plaintiff at his parents' residence in Nevada at the direction of their supervisors Defendants Quintinilla and Dumanis, respectively, in an effort to chill Plaintiff's first amendment rights. In its Order of June 27, 2007, the Court noted that although Plaintiff had not cited the location of the alleged visit by Sanchez and Jay Jay/Buttitta, Paintiff had alleged the meeting took place in Nevada based upon an examination of the proceeding paragraph. (See Order at 13.)  Consequently, and due primarily to Sanchez and Jay Jay/Buttitta's alleged visit, the Court concluded that Sanchez and Jay Jay/Buttitta had purposefully availed themselves of the jurisdiction of the Court in both an individual and official capacity, and that Quintinilla and Dumanis had availed themselves of the jurisdiction in an official capacity, as Plaintiff subjectively believed Sanchez and Jay Jay/Buttitta were acting on behalf of Quintinilla and Dumanis. (See Order at 13.)

Here, Defendants Sanchez, Quintinilla, and Jay Jay/Buttitta seek once again, that the Court dismiss Plaintiff's claims against them for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(2),(3), and (c). Defendants additionally challenge venue. Specifically, Defendants argue that the visit made by Defendants Sanchez and Jay Jay/Buttitta to Plaintiff's parent's residence in Nevada, upon which the Court found Defendants had availed themselves of jurisdiction in Nevada, actually took place in California. Additionally, Defendants contend that Plaintiff's remaining claims against Defendants in their official capacities fail under the Eleventh Amendment. Here, the Court first considers Defendants' contention that there is no basis for the Court to exercise personal jurisdiction over them.

**II. Analysis**

As discussed in detail in its previous Order, the Court has already established that it has subject matter jurisdiction over Plaintiff's claims. Here, however, in light of the new knowledge regarding Defendants' contacts with the forum state, the Court must reconsider whether or not it may exercise personal jurisdiction over the particular Defendants. As stated in its previous Order,

> When personal jurisdiction is challenged by motion as an initial response, and 'the [district] court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss.' Thus, in order to defeat [a] motion[ ] to dismiss for lack of personal jurisdiction, at this stage, Plaintiff[ ] only need[s] to make, through [ ] pleadings and affidavits, a prima facie showing of the jurisdictional facts.

Myers v. Bennett Law Offices, 238 F.3d 1068, 1071 (9th Cir. 2001) (quoting Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977); and citing Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 912 (9th Cir. 1990)). However, the plaintiff must establish personal jurisdiction over each defendant with respect to each claim asserted. See Data Disc, Inc., 557 F.2d 1280. "For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must liberally construe the complaint in the light most favorable to the plaintiff." Moreno, 25 F. Supp. 2d at 1062 (citing Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Argabright v. U.S., 35 F.3d 472, 474 (9th Cir. 1994)).

**A. General Jurisdiction**

"A defendant whose contacts with a state are 'substantial' or 'continuous and systematic' can be haled into court in that state in any action, even if the action is unrelated to those contacts." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). In this case, the Defendants do not have a substantial or continuous presence in the state of Nevada. The Defendants are all residents of California. Further, the Plaintiff has not alleged facts that would establish that the Defendants have a substantial or continuous presence in the state of Nevada. Therefore, the Court does not have general jurisdiction over the Defendants.

**B. Specific Jurisdiction**

"When subject matter jurisdiction is premised on a federal question, a court may exercise specific jurisdiction over a defendant if a rule or statute authorizes it to do so and the exercise of such jurisdiction comports with the constitutional requirement of due process." Myers, 238 F.3d at 1072. According to Fed. R. of Civ. P. 4(k)(1)(A), "'service of a summons . . . is effective to establish jurisdiction over the person of a defendant []who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'" Myers, 238 F.3d at 1072 (quoting Fed. R. Civ. P. 4(k)(1)(A)). Since service of the summons was not in Nevada, it is necessary to "look to Nevada's long-arm statute. The Nevada Supreme Court has interpreted Nevada's long-arm statute to reach the limits of federal constitutional due process." Id. Therefore, the relevant analysis is whether the Defendants have minimum contacts with Nevada so as to satisfy constitutional due process.

The Ninth Circuit utilizes a three prong test when determining "the nature and quality of [a defendant's] contacts for purposes of specific jurisdiction[.]" Id. First, the Defendant must "purposefully avail[ ] [himself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's law. Second, the claim must arise out of [the] forum-related activities. Third, the exercise of jurisdiction must be reasonable." Id.

"Once the defendant has challenged the exercise of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction." Butcher's Union Local No. 498 v. SDC Investment, Inc., 788 F.2d 535, 538 (9th Cir. 1986) (citing KVOS, Inc. v. Associated Press, 299 U.S. 269 (1936)). Here, as before, the Defendants have challenged the ability of this Court to exercise personal jurisdiction over them. Therefore, the burden of establishing jurisdiction lies with the Plaintiff.

**1. Purposeful Availment**

The Ninth Circuit has stated that the purposeful availment prong of the personal jurisdiction analysis "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Myers, 238 F.3d at 1072 (quoting Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000)). The Ninth Circuit has pointed out that in the determination of purposeful availment, the Supreme Court has

> approved an 'effects test, holding that where the defendants knew that their actions would have a potentially devastating effect on the plaintiff, who resided in California, and that the brunt of the injury caused by their actions would be felt in California, they were subject to the jurisdiction of the California courts. Calder, 465 U.S. at 790. The fact that there was no physical contact with California and that their actions all took place in Florida would not relieve them of personal jurisdiction where the effects of their Florida conduct were felt in California. Id.

Brainerd v. Governors of University of Alberta, 873 F.2d 1257, 1260 (9th Cir. 1989).

Previously, the Defendants argued that the face of Plaintiff's Complaint fails to indicate that any of the Defendants purposefully directed any activity toward Nevada. Here, Defendant Buttitta contends that the only conduct that occurred in Nevada was when he traveled to Laughlin, Nevada and met with a Nevada parole agent and local police regarding Plaintiff. In their previous Motion to Dismiss, Defendants argued that there is no allegation in the Complaint suggesting any nexus between the moving Defendants and the two Doe Defendants who traveled to Nevada. The Defendants also contended that the Complaint fails to set forth any factual basis concerning the visit and Plaintiff's alleged constitutional injuries. On the other hand, the Plaintiff alleges that he was

5

residing in Nevada at the time of the alleged violations of his First Amendment rights. Plaintiff argues that since the Defendants knew that their conduct would have an effect on a Nevada resident, the Defendants should be subject to the jurisdiction of Nevada courts. The Court here, confirms its previous holding in regards to Defendants' Motion to Dismiss, with the exception of its ruling regarding paragraphs 8 and 28. (See Order at 13–15.)

Specifically, in paragraphs 8 and 28 of the Complaint, Plaintiff alleges that Dumanis sent Jay Jay/Buttitta to Plaintiff's parents' residence in order to intimidate the Plaintiff from exercising his right to freedom of speech. In its Order of June 27, 2007, although the Complaint failed to indicate the location of the residence, based upon the wording of the previous paragraph in the Complaint, the Court found that the alleged visit took place at Plaintiff's parents' residence in Laughlin Nevada. In their current Motions, Defendants have brought to the Court's attention that the visit actually took place at Plaintiff's parents' residence in San Diego County, California. (See Buttitta Mot. to Dismiss at 3, 10, Ex. A.) Plaintiff admits that the visit to his parents' residence occurred in California. (See Pl.'s Opp. at 2.)

Previously, the Court found that it had personal jurisdiction over Sanchez, Jay Jay/Buttitta Dumanis, and Quintinilla, after relying upon the information in the Complaint alleging that Sanchez accompanied Jay Jay/Buttitta to Plaintiff's parents' residence in Nevada under the direction of his supervisor Quintanilla, and that Plaintiff subjectively believed Jay Jay/Buttitta was acting on behalf of Dumanis.[2] The Court determined that Plaintiff demonstrated a prima facie showing that the Defendants, Dumanis and Jay Jay/Buttitta purposefully directed their conduct into the state of Nevada by visiting Plaintiff at his parents' residence in Nevada, and that Defendants Dumanis and

---

[2] Specifically, the Court found that it had personal jurisdiction over Sanchez, Jay Jay/Buttitta, Dumanis, and Quintinilla because even if Jay Jay/Buttitta was not an actual agent of Dumanis, Plaintiff had demonstrated a prima facie showing of apparent authority. The Ninth Circuit has held that "the actions of an agent are attributable to the principal" for purposes of establishing personal jurisdiction. Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990). "A party claiming apparent authority of an agent must prove (1) that the acting party subjectively believed that the agent had authority to act for the principal and (2) that the subjective belief in the agent's authority was objectively reasonable." Myers, 238 F.3d at 1073 (citation omitted).

1  Quintanilla purposefully availed themselves of the privilege of conducting activities in this
2  jurisdiction for the claims regarding their official capacity because Jay Jay/Buttitta was an agent of
3  Dumanis in her official capacity, and because Defendant Quintanilla was Sanchez's direct
4  supervisor.
5        Specifically, the actions upon which the Court made a determination of purposeful availment
6  were that Defendants Sanchez and Jay Jay/Buttitta met Plaintiff at his parents' residence in Nevada,
7  where Sanchez "strongly warned" Plaintiff against putting information on the Internet, and that Jay
8  Jay/Buttitta told Plaintiff that "if he put evidence exposing wrongdoing by an attorney on the
9  internet, the attorney would win because plaintiff would be sent back to prison." (Compl. at 8.)
10  Although the Court found it questionable that Sanchez and Jay Jay/Buttitta's alleged actions
11  constitute behavior sufficient to sustain Plaintiff's claims, recognizing that it must construe all facts
12  as alleged on the face of the Complaint as true, and in the light most favorable to the Plaintiff, the
13  Court found that the activities alleged of Jay Jay/Buttitta and Sanchez described in paragraph 28,
14  demonstrated that Jay Jay/Buttitta and Sanchez had availed themselves of the jurisdiction of the
15  Court.  Here however, upon learning that the meeting at Plaintiff's parents' residence actually took
16  place in the state of California, the Court reconsiders its earlier determination, and finds that Plaintiff
17  has failed to allege facts sufficient to establish that Defendants Jay Jay/Buttitta and/or Sanchez
18  purposefully availed themselves of the jurisdiction, and consequently, that Defendants Dumanis or
19  Quintinilla availed themselves of the jurisdiction.
20        Here, in spite of his concession that the meeting at Plaintiff's parents' residence took place in
21  California, Plaintiff contends that this Court maintains jurisdiction over the defendants due to
22  allegations that Defendants Ramos, Jay Jay/Buttitta, and a Doe Defendant from the DA's office flew
23  to Laughlin, Nevada to meet with the local police and the Plaintiff's Nevada parole agent.  As the
24  Court found in its Order of June 27, 2007, the Court cannot find that Defendants' alleged action of
25  flying to Laughlin to meet with a Nevada parole agent, or police, is sufficient to establish minimum
26

contacts. Similarly, as in its previous order, the Court maintains that a single phone call is not sufficient to establish minimum contacts.

Therefore, the Court finds, that Plaintiff has failed to make a prima facie showing that Defendants Jay Jay/Buttitta and Sanchez purposefully availed themselves within the jurisdiction, in both their individual and official capacities, or consequently, that Defendants Dumanis and Quintilla purposefully availed themselves with jurisdiction in their official capacities. Therefore, Plaintiff has failed to establish sufficient minimum contacts over any of the remaining Defendants. Furthermore, because the Court does not have personal jurisdiction over the remaining Defendants, it is not necessary to consider Defendants remaining arguments for dismissal or summary judgment.

## III. Conclusion

**IT IS HEREBY ORDERED** that Defendant Jay Jay/Buttitta's Motion to Dismiss (#47), and Defendants Sanchez and Quintanilla Joinder (#51) to Battitta's Motion to Dismiss are **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants Sancho Sanchez and M. Quintanilla's Motion for Partial Summary Judgment (#44) is **DENIED** as moot.

DATED this 26th day of March, 2008.

_____
Kent J. Dawson
United States District Judge